**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ENRON NIGERIA POWER
HOLDING, LTD.,                              Case No. 1:13-cv-01106-RLW
Plaintiff/Petitioner

v.

FEDERAL REPUBLIC
OF NIGERIA,
Defendant/Respondent .
_____/

**MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION TO
QUASH SERVICE AND DISMISS THE COMPLAINT PURSUANT TO
FED.R.CIV.P. RULES 12(B)(1), 12(B)(4), AND 12(B)(5)**

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES CITED ..........................................................................................iii

LEGAL ARGUMENT ................................................................................................................1

I. THE COURT LACKS PERSONAL JURISIDCTION FOR INSUFFICIENT SERVICE ................................................................................1

II. THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER PETITIONER'S CLAIM AGAINST NIGERIA .....................................................4

III. PETITIONER IS AN OFFSHORE ANONYMOUS SHELL COMPANY AND A PRODUCT OF THE ENRON FRAUD THUS AN ARBITRATION AWARD IN ITS FAVOR SHOULD BE UNENFORCEABLE AS AGAINST PUBLIC POLICY ....................................8

IV. ENFORCING THE AWARD IN THE U.S. WILL VIOLATE U.S. PUBLIC POLICY AND INTEREST AND IT IS AGAINST THE U.S. PUBLIC POLICY AND INTEREST ................................................................11

CONCLUSION AND RELIEF ..................................................................................................13

CERTIFICATE OF SERVICE

# INDEX OF AUTHORITIES

**CASES**

*Argentina v. Weltover,* 504 U.S. 607, 614 (1992) ........................................................................ 7
*Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).................. 4
*Aurelius Capital Partners v. Argentina*, No. 07 Civ. 2715 (TPG), 2008 U.S. Dist. LEXIS 101764, *35-36 (S.D.N.Y. Dec. 11, 2008) (reversed and vacated 584 F.3d 120 (2d Cir. 2009) ........................................................................................................ 6
*Beacon Enterps. v. Menzies*, 715 F.2d 757, 762 (2d Cir. 1983)........................................ 4
*Cabiri v. Gov't of Rep. of Ghana*, 165 F.3d 193, 196 (2d Cir. 1999)................................ 5
*Greylock Global v. Province of Mendoza,* No. 04 Civ. 7643 (HB) 2005 U.S. Dist. LEXIS 1742, at *18 (S.D.N.Y. Feb. 8, 2005) ............................................................... 7
*Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003) ........................................................... 1
*In re Enron*, 235 F. Supp. 2d at 613-17 ............................................................................ 8
*In re Enron*, 235 F. Supp. 2d at 616 ................................................................................. 8
*Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 153 (2d Cir. 2007)...................................... 5
*Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)........................................................ 4
*Nat'l Equipment Rental Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964) ............................... 3
*Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ................................ 1
*Rivera-Lopez v. Dorado*, 979 F.2d 885, 887 (1st Cir. 1992)............................................ 1
*Shapiro v. Rep. of Bolivia*, 930 F.2d 1013, 1020 (2d Cir. 1991); 28 U.S.C. § 1330(b) ......................................................................................................................... 8
*Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488 (1983) ........................... 5
*Verlinden*, 461 U.S. at 485................................................................................................ 8
*Verlinden*, 461 U.S. at 488-89; 28 U.S.C. § 1604 ............................................................ 5

**FEDERAL STATUTES**

28 U.S.C. §§1605-07.................................................................................................... 5, 6
28 U.S.C. §1608 ................................................................................................................ 1

**FEDERAL RULES**

Fed. R. Civ. P. Rule 12(b)(1) ............................................................................................ 4
Fed. R. Civ. P. Rule 12 (b)(4)(J)................................................................................... 1, 4
Fed. R. Civ. P. Rule 12 (b)(5) ........................................................................................... 1
Fed. R. Civ. P. Rule 8 (a)(1) ............................................................................................. 4

**LEGAL ARGUMENT**

**I.     THE COURT LACKS PERSONAL JURISIDCTION FOR INSUFFICIENT SERVICE.**

Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). "If the plaintiff does not properly effect service on a defendant, then the defendant may move to dismiss the complaint" pursuant to Federal Rule of Civil Procedure 12(b)(5). *Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003). "Once challenged, [a] plaintiff [has] the burden of proving proper service." *Rivera-Lopez v. Dorado*, 979 F.2d 885, 887 (1st Cir. 1992).

The procedure for serving a foreign state is set forth in Fed R. Civ. P. Rule 4(J), (Serving a Foreign, State, or Local Government.). It says a foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. §1608 . 28 U.S.C. §1608 provides that:

> **(a)** Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:
>
> **(1)** by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> **(2)** if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

1

**(3)** if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

**(4)** if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.
As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation. 28 U.S.C. §1608

Petitioner did not comply with the requirement of the statute. Instead, the Petitioner alleges in par. 4 of its petition that "*Nigeria is a foreign state that engages in commercial activity within the United States. Pursuant to the terms of the PPA, Nigeria may be served process by serving the Honorable Minister, Ministry of Power and Steel, Federal Government Secretariat, Annex 3, Shehu Sagari Way, Maitama, Abuja, federal Republic of Nigeria*". (*See* Ex. A, Clause 22. P 61 of the petition).

The assertion that the PPA provision for service of process in the arbitration proceeding also covers service in a District Court proceeding is without merit. The

Federal statue on service of foreign government is controlling for the purposes of the instant District Court proceedings.

It is settled law "that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether." *Nat'l Equipment Rental Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964). The Federal Republic of Nigeria asserts that it did not waive its right to proper service in the Federal Courts of the United States through its signing of the PPA and its acceptance of the arbitration clause. Further Nigeria is not a signatory to the Hague Convention on the Service Abroad on Judicial and Extra Judicial Documents in Civil and Commercial Matters. Hence, Service of process on the Respondent in Nigeria can only be made through Letters Rogatory.

In Nigeria, service for foreign Tribunals is provided for in Order 6 Rule 23 of the Federal High Court Civil Procedure Rule, 2009. The Rule states that:

> "Where, in any civil cause or matter pending before a court or tribunal in any foreign country with which a Convention in that behalf has been or shall be made, a request for service of any document on a person within the jurisdiction is received by the Chief Judge from the consular or other authority of the country, the following procedure shall, subject to any special provision contained in the Convention, be adopted-
>
> (a) The service shall be effected by the delivery of the original or a copy of the document, as indicated in the request and the copy of the translation, to the party or person to be served in person by an officer of the court, unless the Court or a judge in Chambers thinks fit otherwise to direct;
>
> (b) no court fees shall be charged in respect of the service but the particulars of charges of the officer employed to effect

service shall be submitted to the Chief Registrar of the Court who shall certify the amount properly payable in respect thereof;

(c) The Chief judge shall transmit to the consular or other authority making the request, a certificate establishing the fact and the date of the service in person, or indicating the reason for which it has not been possible to effect it, and at the same time shall notify to the said consular or other authority the amount of the charges certified under paragraph (b) of this rule".

Service of the Process by the Petitioner was not only insufficient under Fed R. Civ. P. Rule 4(J), (Serving a Foreign, State, or Local Government) but also under Oder 6 Rule 23 of the Federal High Court Civil Procedure Rules 2009 (Nigeria).

## II. THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER PETITIONER'S CLAIM AGAINST NIGERIA.

A pleading must contain "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), Petitioner bears the burden of establishing subject matter jurisdiction. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996) ("The burden of proving jurisdiction is on the party asserting it"); *Beacon Enterps. v. Menzies*, 715 F.2d 757, 762 (2d Cir. 1983). Here, the Foreign Sovereign Immunities Act (FSIA) provides the sole source for obtaining subject matter jurisdiction over a foreign state. *Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989) ("[T]he text and structure

of the FSIA demonstrates Congress' intention that the FSIA be the sole basis for obtaining jurisdiction over a foreign state in our courts"); *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488 (1983) (FSIA "contains a comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state").

Under the FSIA, a foreign state is immune from the jurisdiction of the federal Courts of the United States unless one of the statutory exceptions to immunity set forth in 28 U.S.C. §§ 1605-07, applies. *Verlinden*, 461 U.S. at 488-89; 28 U.S.C. § 1604 ("a foreign state shall be immune . . . except as provided in sections 1605-07 of this chapter"). If none of the exceptions applies, then there is no subject matter jurisdiction over the foreign state. *Verlinden*, 461 U.S. at 489. Petitioner bears the burden of identifying an applicable exception to the immunity of a foreign sovereign. *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 153 (2d Cir. 2007); *Cabiri v. Gov't of Rep. of Ghana*, 165 F.3d 193, 196 (2d Cir. 1999).

The Commercial activity exception to the immunity of a foreign state does not apply in this case. The Federal Republic of Nigeria's role in this case was that of guarantor of the contract that is the subject of the arbitral award. The role of guarantor of a contract governed by the law of Nigeria and entered into by a Cayman Islands shell company and a Nigerian government agency does not constitute, as petitioner asserts, *"commercial activity within the United States of America"*. Respondent submits that the petitioner mischaracterized the commercial

5

activity exception in FSIA as it applies to this case. Respondent's failure to attach it to the activity giving rise to the arbitration is fatal to personal jurisdiction of this Court.

28 USC §1605(a)(2) allows U.S. District Courts to assert jurisdiction over a foreign State in actions based upon:

> (i.) a commercial activity carried on in the United States by the foreign state; or
>
> (ii.) an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or
>
> (iii.) an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

A related exception to immunity from execution is found in Section 1610 of the FSIA on the basis of commercial activity in the United States, "commercial activity" being identically defined by courts in both provisions. *Aurelius Capital Partners v. Argentina*, No. 07 Civ. 2715 (TPG), 2008 U.S. Dist. LEXIS 101764, *35-36 (S.D.N.Y. Dec. 11, 2008) (reversed and vacated 584 F.3d 120 (2d Cir. 2009).

The Petitioner has failed to demonstrate that the Respondent, as a mere guarantor of the PPA that was executed in Nigeria constituted "commercial activity carried on in the United States or performed in the United States." It does not even constitute an act outside the territory of the United States in connection with a

6

commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States. As noted in the legislative history of FSIA, original jurisdiction under subsection (a) may be established only by some connection between the lawsuit and the United States which does not exist in this case. The Supreme Court has explained that "when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are commercial" within the meaning of the FSIA. *Argentina v. Weltover,* 504 U.S. 607, 614 (1992). In *Weltover*, Argentina had engaged in commercial activity in the United States by "issuing negotiable debt instruments denominated in United States dollars and payable in New York and [] appointing a financial agent in that city." See also *Greylock Global v. Province of Mendoza,* No. 04 Civ. 7643 (HB) 2005 U.S. Dist. LEXIS 1742, at *18 (S.D.N.Y. Feb. 8, 2005) (Province of Mendoza, Argentina, had engaged in commercial activity in the United States by issuing bonds denominated in dollars subject to an Indenture governed by New York law and appointing a New York bank as trustee). However, in the instant case, the Petitioner has failed to establish that Nigeria, acting as a guarantor to a PPA to be executed in Nigeria has engaged in a commercial activity in the U.S more so, when the Petitioner is a Cayman Islands limited liability company.

Accordingly, there is neither subject matter jurisdiction over Petitioner's claim nor personal jurisdiction over Nigeria. Petitioner's failure to establish subject

7

matter jurisdiction deprives the Court of personal jurisdiction under the FSIA. Personal jurisdiction over a foreign state exists only if subject matter jurisdiction is established under the FSIA and proper service is affected under the statute. *Verlinden*, 461 U.S. at 485; *Shapiro v. Rep. of Bolivia*, 930 F.2d 1013, 1020 (2d Cir. 1991); 28 U.S.C. § 1330(b).

### III. PETITIONER IS AN OFFSHORE ANONYMOUS SHELL COMPANY AND A PRODUCT OF THE ENRON FRAUD THUS AN ARBITRATION AWARD IN ITS FAVOR SHOULD BE UNENFORCEABLE AS AGAINST PUBLIC POLICY.

Enron Nigeria Power Holding Limited was an offshore shell affiliate of the now defunct Enron Corporation. This court may judicially notice that the Enron Corporation was one of the great financial frauds of recent years. Several of its officers were convicted of crimes, its accounting firm, Arthur Anderson was forced to close its doors after being indicted and the company wound up in bankruptcy. Enron engaged in false transactions with affiliates across the globe, which it treated as real. It booked the expected profits from the transactions reaching far into the future as real to make its financial statements look good. It effectively booked sales and earnings for doing business with itself. See *In re Enron*, 235 F. Supp. 2d at 616. Second, Enron used its special purpose vehicles to move debt from its books and hide it on its affiliates' books. *In re Enron*, 235 F. Supp. 2d at 613-17.

Enron's investment banks, attorneys and accountants, created the special purpose vehicles and, disguised them to appear as independent entities.

The petitioner in this case, Enron Nigeria Power Holding Limited is one of the Enron special purpose entities. To the extent it had assets they should have been disposed of in the bankruptcy proceedings. To the extent the corporation was owned by principals in the Enron case, the company may have been subject to seizure by the United States as a result of the various criminal and civil proceedings. At a minimum this court should determine the beneficial ownership of Enron Power Holding Nigeria Limited to insure that the effort to collect this arbitration award is not against the public policy of either the United States or the Federal Republic of Nigeria.

Refusal to enforce an arbitration award as against public policy is an accepted exception to the New York Convention, thus this court should permit a hearing on the issue of the connection of the petitioner to the principals in the Enron case and to the Enron bankruptcy.

Enron Power Holding Nigeria Limited was and is *"an empty shell, utterly lacking in content and substance, with no independent or in-house .financial or technical capability whatever"*.

The fact of this relationship was underscored in the Award when the Arbitrators stated as follows:

9

> "On 30 November 2001, Enron Corporation filed for bankruptcy and on 2 December 2001 it filed for Chapter 11 bankruptcy protection. On 2 December 2001, Mr. Yao Apasu, on behalf of Claimant (the Petitioner), wrote to the President of the FRN (Respondent), H.E. Chief Olusegun Obasanjo, and to the Executive Governor of Lagos State, assuring them that Enron's Chapter 11 filing for bankruptcy protection did not affect ... *Enron Nigeria Power Limited and its affiliates involved in the development of the Nigeria Project [as they} are not included in the bankruptcy filing and are free to pursue the development of the Lagos IPP in the ordinary course of business.*"

> "In the period after Enron filed for bankruptcy, there was little or no communication between ENPH (the Petitioner) and any of the Respondents. It was not until November 2004 that ENPH wrote to the President of FRN (Respondent) seeking to implement Phase II of the Project and asking that NEPA withdraw its "stay" of the Agreement. There then followed, during 2005, several exchanges between ENPH and the Federal Ministry of Power and Steel which failed to resolve the issue. In its letter of 22 November 2005, the Federal Ministry of Power and Steel confirmed that the Original PP A *"was suspended and remains so"*. See paragraphs 40, 41 and 43 of the Award.

Even if there was any modicum of reason to withdraw the stay and continue with the implementation of the PPA, no responsible government, with all the available information at its disposal concerning the nature of the Enron scandal would commit tax payer money to a Cayman Islands shell company with no assets and no capacity to complete a major infrastructure project. Moreover, the PPA was dependent on Enron for credit and for the technical expertise to complete the project.

10

The Petitioner has no staff of its own, no office of its own anywhere in the world, no bankers or bank accounts, a share capital of only US$ 1000, no assets, no earnings, no auditors and no management audited accounts, never seen or built a power station, never transported gas, never constructed any gas pipeline, no track record whatever, no electricity, gas or pipeline experience or capability of its own, no financial or technical substance whatever apart from those to be provided by its parent Company, Enron Corporation. It was against the Respondent's public policy and interest as a sovereign nation to leave its door open to a company tarred by fraud.

### IV. ENFORCING THE AWARD IN THE U.S. WILL VIOLATE U.S. PUBLIC POLICY AND INTEREST AND IT IS AGAINST THE U.S. PUBLIC POLICY AND INTEREST.

Allowing the Petitioner, a subsidiary of Enron Corporation to use the U.S Courts as a forum to enforce an Arbitral award will violate the U.S public policy and interest. In 2001, the U.S government and general public were blind-sided by a harsh truth: the capital structure of its seventh largest corporation Enron was a myth. Investors lost nearly $80 billion, but they were not the only victims. Rank and file Enron employees, prohibited from tapping retirement accounts, watched sixty percent of their assets vanish, a $1.3 billion loss. There were, however, a few winners: Enron's top management siphoned off at least $1.8 billion from bonuses and insider sales.

At the end of 2001, it was revealed that it's reported financial condition was sustained substantially by an institutionalized, systematic, and creatively planned accounting fraud, known since as the Enron scandal. Enron has since become a well-known example of willful corporate fraud and corruption.

Enron filed for bankruptcy protection in the Southern District of New York during late 2001 and ended its bankruptcy in November 2004, pursuant to a court-approved plan of reorganization, after one of the most complex bankruptcy cases in United States history. On September 7, 2006, Enron sold Prisma Energy International Inc., its last remaining business, to Ashmore Energy International Ltd. Its former Chief Executive Officer, Jeffery Skilling and some other top executives received various jail sentences for their roles in the infamous Enron Scandal.

Even though Enron Corporation sold its remaining business, somehow Enron Nigeria Power Holding Limited remained as an independent company not liquidated in the bankruptcy and capable of filing suit in the courts of the United States.

This court should dismiss this effort to enforce the arbitral award on the grounds that it should not be party to the enforcement of a likely fraudulent arrangement involving parties to financial crime and bankruptcy. At the very least, the court should allow respondents the opportunity to discover the beneficial

ownership of the petition to determine whether the beneficial owners were parties to the Enron fraud.

## CONCLUSION AND RELIEF

For the reasons set forth herein, the Respondent respectfully requests this Honorable Court to quash the service of process and dismiss Petitioner's petition with prejudice

        Respectfully Submitted

        /s/David Elesinmogun
        David Elesinmogun
        District of Columbia ID: 996952
        Attorneys for the Defendant/Respondent
        Elesinmogun & Egwuatu, LLP
        1629 K Street NW, Suite 300
        Washington DC 20006
        Tel: 202-349-3977
        Fax: 202-331-3759
        Email: de@eandelawyers.com

        /s/Jack Blum
        Jack Blum
        District of Columbia ID: 43513
        OF COUNSEL
        1629 K Street NW, Suite 300
        Washington, DC 20006
        Phone: (240) 476-6932
        Fax: (443) 458-0656
        Email: blumja@gmail.com

Dated: December 23, 2013

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsels of record.
.

                                            /s/David Elesinmogun
                                            David Elesinmogun

Dated: December 23, 2013