## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ENRON NIGERIA POWER HOLDING, LTD.,** | § | |
| Petitioner | § | |
| | § | |
| | § | |
| v. | § | No.1:13CV01106 |
| | § | |
| | § | |
| **FEDERAL REPUBLIC OF NIGERIA,** | § | The Honorable Robert L. Wilkins |
| | § | |
| Respondent | § | |

### PETITITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RESPONDENT'S MOTION TO QUASH SERVICE AND DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12 (b) (1), (5) and (6)

MARK GIBSON
16106 Morgan Run
Missouri City, Texas 77489
Phone: 713 301-9021
Fax: 281 261-6357
Email: MPCG2002@comcast.net
District of Columbia Circuit ID: 475341

OF COUNSEL:
KENNETH R. BARRETT
3740 Greenbriar #541873
Houston, Texas 77254
Phone: 281 433-0837
Fax: 832 582-5935
Email: KennethRoyceBarrettLaw@yahoo.com
State Bar of Texas No 01812200

Counsel for Petitioners

1

## <u>TABLE OF CONTENTS</u>

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Relevant Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

   I.   This Court has Subject Matter Jurisdiction Over this Matter. . . . . . . 13

   II.   The Court has Personal Jurisdiction Over the Federal Republic of Nigeria . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

   III.   Consideration of Nigeria's Recycled Claims Already Considered by the Arbitration Panel as to Enron Corporation, Contravenes the Federal Policy in Favor of Efficient Resolution of Arbitrated Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

   IV.   Nigeria has Failed to and Cannot Establish that Enforcement of the Final Award Is Contrary to U.S. Public Policy . . . . . . . . . . . . . . . . . . . . 20

         A. Without Proof of any Misconduct by ENPH or as to ENPH, Nigeria Asserts that Enforcement Violates U.S. Public Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

         B. The Burden for Establishing the Public Policy Exception to Enforcement is "High and Infrequently Met" . . . . . . .21

         C. Nigeria Fails to Identify a Specific U.S. Public Policy Enforcement of the Final Award will Contravene . . . . .22

         D. Nigeria Cannot Show that Enforcement would Offend the Most Basic Notions of Morality and Justice in this Country . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

   V.   In the PPA, Nigeria Waived its Right to Contest the Arbitration Outside of the United Kingdom. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF AUTHORITIES

### Cases

Ackermann v. Levine,
788 F.2d 830, 841 (2d Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

*Argentine Republic v. Amerada Hess Shipping*,
*488 U.S. 428, 434 (1989)*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Banco de Seguros Del Estado v. Mutual Marine Office, Inc.,
 344 F.3d 255, 264 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

Fotochrome, Inc. v. Copal Co.,
 517 F.2d 526 (2d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

G.E. Transp. S.P.A. v. Republic of Albania,
 693 F.Supp.2d 132, 136 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

Halcoussis Shipping Ltd. v. Golden Eagle Liberia Ltd.,
Civil Action No. 88-4500 (MJL), 1989 WL 115941, at *2 (S.D.N.Y. Sept. 27,
1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

Int'l Road Fed'n v. Embassy of the Dem. Rep. of Congo,
131 F. Supp.2d 248, 251 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Jackson v. People's Republic of China,
794 F. 2d 1490, 1493 (11th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Kanuth v.  Prescott, Ball & Turben, Inc.,
949 F.2d 1175, 1178 (D. C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan,
190 F. Supp. 2d 936, 955 (S.D. Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

LaPrade v. Kidder, Peabody & Co.,
 94 F. Supp. 2, 4-5 (D. D. C. 2000) *aff'd* 246 F 3d 702 (D.C. Circuit 2001) . . . 18

Marlowe v. Argentine Naval Comm'n,
604 F.Supp. 703, 708 (D.D.C. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
473 US 614, 631 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16, 17

Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie
Du Papier (Ratka) (R), 508 F.2d 969 (2d Cir.1974) . . . . . . . . . . . . . . . . . . 21, 23

Pertambangan Minyak Dan Karaha Bodas Co. v. Perusahaan,
190 F. Supp.2d 936 (S.D. Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

Price v. Socialist People's Libyan Arab Jamahiriya,
294 F.3d 82 ( D.C. Cir. 2002),. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14-15

Saudi Arabia v. Nelson,
507 U.S. 349, 355, 113 S. Ct. 1471, 123 L.Ed.2d 47 (1993) . . . . . . . . . . . . . . . 13

Tahan v. Hodgson,
662 F.2d 862 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

Teamsters Local Union No. 61 v. United Parcel Serv., Inc.,
272 F.3d 600 (D. C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Telnor Mobile Commc'ns AS v. Storm LLC,
584 F.3d 396 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

TermoRio S.A. E.S.P. (Colombia) v. Electranta S.P. (Colombia),
487 F.3d 928 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

United Paperworkers Int'l union v. Misco, Inc.,
484 U.S. 29 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17, 22

Verlinden B.V. v. Central Bank of Nigeria,
461 U.S. 480, 103 S. Ct. 1962, 76 l.ed.2D 81 (1983) . . . . . . . . . . . . . .. . . . . . . 13

Yukos Capital S.A.R. v. OAO Samaraneftegaz,
10 Civ. 6147 (PAC), (S.D.N.Y. August 6, 2013) . . . . . . . . . . . . . . . . . . . . . . . . 19

## Statutes

9 U.S.C. § 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

28 U.S.C. §1330 (a) and (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,13,14,16

28 U.S.C. §1605-07 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. §1608 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 15, 16

## Federal Rules

Fed. R. Civ. P. 4 (J) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

## Other Sources

Gary Born, International Commercial Arbitration in the United States, 2nd edn (Kluwer, The Hague, 2001) at 914United States District Court for the District of Columbia, *Attorney Manual for Service of Process on a Foreign Defendant (Pursuant to FRCP 4 and the Foreign Services Immunities Act)*, Amended: April 2009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

H.R. REP. No. 94-1487, at 7 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Andreas Lowenfeld, "Arbitration and Issue Preclusion: a view from America, Arbitral Tribunals or State Courts: Who must defer to whom?",
ASA Special Series No. 15, 2001; and Richard Shell, "Res judicata and Collateral Estoppel: Effects of Commercial Arbitration" (1988) 35 UCLA LAW REV 623 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Attorney Manual for Service of Process on a Foreign Defendant (Pursuant to FRCP 4 and the Foreign Sovereign Immunities Act) (Amended: April 2009), United States District Court for the District of Columbia . . . . . . . . . . . .15

New York Convention, Art. V (1), (2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

INTRODUCTION

In its Motion to Quash and Dismiss, Respondent raises three issues: 1) whether this Court has subject-matter jurisdiction over this action; 2) whether this Court has personal jurisdiction over the Federal Republic of Nigeria ("Nigeria" or "Respondent"); and 3) whether enforcement of the ICC arbitration award of damages to Enron Nigeria Power Holding, Ltd.'s ("ENPH" or "Petitioner") violates the public policy of the United States.

This Court has subject-matter jurisdiction because Nigeria is a sovereign state that waived its immunity from suit on the agreement at issue in the arbitration, thus triggering one of the exceptions to immunity under the Foreign Sovereign Immunities Act (the "FSIA"). The Court's personal jurisdiction is derived from the Court's subject matter jurisdiction as well as ENPH's proper service of Nigeria pursuant to the special arrangement for notice found within the agreement between Petitioner and Respondent.

Nigeria's public policy argument is a repackaging of evidence and arguments Nigeria raised and could have asserted before the arbitration panel.  The Court's reconsideration of those contentions would violate the federal government's policy of supporting the efficiency of the arbitral process. Moreover, since Nigeria did not and cannot identify an explicit and specific policy embodying core American notions of morality and

justice that enforcement of this ICC arbitration award would contravene,

there is no impediment to the Court's summary confirmation of the award.

## RELEVANT FACTS

Petitioner, the Lagos State Government, Nigeria and the National Electric Power Authority of Nigeria ("NEPA")[1] entered into the Nigeria Power Purchase Agreement for Electricity Generating Facilities in Lagos, Nigeria (the "PPA")[2] on 6 December 1999.

Under the terms of the PPA, in exchange for compensation, ENPH was to design, build, arrange financing for and run electricity-generating plants and natural gas pipelines around and within Lagos.

The parties also agreed:

a)     to submit disputes between and among themselves to "binding" arbitration under the Rules of Arbitration of the International Chamber of Commerce (the "ICC Rules") then in effect;[3]

b)     that "[a]ny determination or award rendered in an arbitration conducted "under the terms of the PPA, "shall be final and binding on all Parties ...[,] shall be implemented in accordance with its terms ...[, and] may be entered as a judgment by any court of competent jurisdiction;"[4]

c)     that "[t]he parties further expressly waive[d] to the fullest extent permitted by applicable law, any right to challenge an award by the arbitrators anywhere outside of ... [London, United Kingdom][5];

---

[1] Power Holding Company of Nigeria, PLC ("PHCN") is the successor in title

[2] A true and correct copy of the PPA is attached to the Motion for Enforcement as Exhibit A.

[3] Ex. A to Motion for Enforcement, Clause 23.1 -23.3, pp. 62-63.

[4] PPA Clauses 23.3.5 (a) and (c)

[5] Id. at p.63.

    d)        Nigeria also would not "[i]n any jurisdiction claim for itself or its assets or revenues immunity from suit, execution, attachment ... or other legal processes and to the extent that in any such jurisdiction there may be attributed to it or its assets or revenues such immunity ... [I]t shall not claim and it **irrevocably waives, such immunity to the full extent permitted by the laws of such jurisdiction**;[6] and that

    e)        "Any costs, fees, or taxes incident to enforcing the award shall be charged against the Party resisting enforcement.[7]

(emphasis added).

Shortly after the parties signed the PPA, PHCN and Nigeria suspended the PPA project, thus violating the terms of the PPA.

ENPH submitted its claims for relief for breach of the PPA and $474,912,000 damages to the ICC International Court of Arbitration on June 13, 2006 in the manner the PPA requires. The arbitration proceedings ensued in London over the course of several years.

Nigeria presented evidence and argued to the panel as to its contentions[8] pertaining to:

1.    "the shell nature" of the parent company of ENPH;
2.    "the long shadow cast ... by the bankruptcy of the Enron companies";
3.    ENPH having been "an empty shell, utterly lacking in content and substance, with no independent or in-house financial or technical capability whatever"; and

---

[6] Ex. A, Clause 25.2, p.65.
[7] Ex. A, Clause 23.3.5(d), p.63.
[8] Final Award, Ex. B to Motion for Enforcement, p.17, ¶63, p.20, and ¶73.

4.      that the insolvency and bankruptcy of Enron by the end of 2001 "considerably affected and almost certainly prevented the Claimant [ENPH] from profiting" from a phase of the project.

The panel considered these contentions, the collapse of Enron Corporation and that company's connection to ENPH in formulating the Final Award.[9]

On November 19, 2012, the three-person Tribunal issued the Final Award[10]. It included findings that "ENPH was established in 1999 as a special purpose company to construct and operate electricity generating facilities in Lagos State, Nigeria", and that Nigeria had breached specific clauses within the PPA. It ordered Nigeria to pay ENPH damages of between $11-12 million – an amount significantly less than what ENPH had asked for - plus interest and legal fees and expenses.[11] It also ordered ENPH to pay the legal expenses of another party. In rendering the award, the Court considered both the collapse of Enron and the ownership of ENPH.

In the section entitled "Notices"[12], the PPA provides that

[a]ll notices or other communications required or permitted to be given hereunder shall be in writing and unless otherwise stated herein, be (as elected by the Party giving

---

[9] Final Award, Ex. B to Motion for Enforcement, pp. 28-32, p.37, ¶123.

[10] The Court may find a more detailed discussion of the monetary terms of the award as well as the ICC tribunal's preliminary awards in the Motion for Enforcement of Arbitration.

[11] See Ex. B to Motion for Enforcement, p.2, ¶2, p. 3, ¶6 and p. 53-54)

[12] Id. at Clause 22, pp.60-61.

such notice) (a) personally delivered with written confirmation of receipt, (b) transmitted by postage prepaid registered mail (airmail if international), (c) by facsimile with a written confirmation of receipt, or (d) by reputable international courier service delivery with written confirmation of receipt to the (relevant) Parties as follows:... If to guarantor, to:

> Ministry of Power and Steel
> Federal Government Secretariat
> Annex 3
> Shehu Shehari Way, Maitama, Abuja
> Attention: the Honourable Minister

After filing the Motion to Enforce the Arbitration Award, ENPH sent, by FEDEX International Courier services, the Summons and Petition addressed to the most recent street address for the Ministry of Power and Steel, and its most recent Minister.  FEDEX served Nigeria on October 2, 2013.

## ARGUMENT

### I.   THIS COURT HAS SUBJECT-MATTER JURISDICTION OVER THIS MATTER.

The 1976 FSIA, 28 U.S.C. § 1330, provides the sole basis for obtaining jurisdiction over a foreign state in United States courts. Argentine Republic v. Amerada Hess Shipping, 488 U.S. 428, 434 (1989). The statute "confers immunity on foreign states in all cases that do not fall into one of its specifically enumerated exceptions." Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 84 (D.C. Cir. 2002). Thus, a foreign state "is

presumptively immune from the jurisdiction of United States courts; unless a specified exception applies....." *See* Saudi Arabia v. Nelson, 507 U.S. 349, 355, 113 S. Ct. 1471, 123 L.Ed.2d 47 (1993) (citing Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 488-49, 103 S. Ct. 1962, 76 L.Ed.2d 81 (1983).

The listed exceptions in the statute codify the theory that restricts government immunity to a foreign state's governmental or public actions, but withholds the immunity from its "private or commercial acts". Price v. Socialist People's Libyan Arab Jamahiriya 294 F.3d at 84.  *See* H.R. REP. No. 94-1487, at 7 (1976); Jackson v. People's Republic of China, 794 F. 2d 1490, 1493 (11th Cir. 1986).

In this case, immunity from the jurisdiction of the courts of the United States is unavailable to Nigeria because it explicitly waived [13] its immunity in the PPA. In this jurisdiction, Nigeria's waiver of immunity from suit in "any jurisdiction" affords the court subject-matter jurisdiction in this case.  *See* G.E. Transp. S.P.A. v. Republic of Albania, 693 F.Supp.2d 132, 136 (D.D.C. 2010) *citing* 28 U.S.C. § 1330(a) (providing that "district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state ... with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement"); see also 9 U.S.C. § 203

---

[13] See Ex. A to Motion for Enforcement, Clause 25.2, p.65.

(providing that the district courts have jurisdiction over actions arising under the New York Convention regardless of the amount in controversy).

## II.    THE COURT HAS PERSONAL JURISDICTION OVER NIGERIA

In this jurisdiction, this Court may exercise personal jurisdiction over Nigeria if two conditions are satisfied. The first condition is that subject matter jurisdiction must exist over the claims at issue. As Nigeria is a foreign state that waived its immunity from suit, the first condition has been met.

The second condition for the Court's exercise of personal jurisdiction is that the party initiating the action must have properly effected service pursuant to 28 U.S.C. § 1608. In other words "[i]f service of process has been made under §1608, personal jurisdiction over a foreign state exists for every claim over which the court has subject matter jurisdiction." Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3D 82, 93 (D.C. Cir. 2002) *citing* 28 U.S.C.§ 1330(b).

Federal Rule of Civil Procedure 4 (j) requires that a 'foreign state ... must be served in accordance with 28 U.S.C. § 1608. In pertinent part, § 1608 (a)(1) provides that service in the courts of the United States ... "shall be made upon a foreign state ...: (1) by delivery of a copy of the summons and complaint in accordance with **any special arrangement for service** between the plaintiff and the foreign state ...; or (2) if no special arrangement exists, by delivery of a copy of the summons and complaint

in accordance with an applicable international convention on service of judicial documents....." (emphasis added)

If service is not possible under the first two provisions of § 1608 (a), then the party seeking service of summons and complaint is to proceed to subsections 3 and then 4.

According to the guidelines of the Courts in this District, a party may not skip the steps in the four-step hierarchical manner of service of foreign defendants. "Service must be performed in a hierarchical manner – if service cannot be made in accordance with section 1608(a)(1), then service is attempted pursuant to Section 1608 (a)(2) and so forth until the various methods are exhausted." United States District Court for the District of Columbia, *Attorney Manual for Service of Process on a Foreign Defendant (Pursuant to FRCP 4 and the Foreign Services Immunities Act)* (Amended: April 2009).

The PPA contains a special arrangement specifying how Nigeria, the guarantor of the PPA, was to be served.[14]  Courts in this jurisdiction have found similar provisions to be "special arrangement[s] for service between the plaintiff and the foreign state ..." under § 1608. *See e.g.,* G.E. Transp. S.P.A. v. Republic of Albania, 693 F.Supp.2d 132, 136-137 (D.D.C. 2010) (contract provided that "any notice to be given to Albania ... shall be in

---

[14] See Ex. A to Motion for Enforcement, Clause 22, pp. 60-61.

writing, and shall be sent by personal delivery, air post, special courier, cable, telegraph, telex or facsimile transmission to or left at Albania's address"); *see also* Int'l Road Fed'n v. Embassy of the Dem. Rep. of Congo, 131 F. Supp.2d 248, 251 (D.D.C. 2001) (observing that a contract provision specifying the method of providing notice constituted a "special arrangement for service" for purposes of § 1608 (a) (1) (*citing* Marlowe v. Argentine Naval Comm'n, 604 F.Supp. 703, 708 (D.D.C. 1985))).

Since Petitioner properly served Nigeria under § 1608 (a) (1) and because this Court has subject matter jurisdiction over this action against Nigeria, the Court has personal jurisdiction over Nigeria in this matter.  *See* G.E. Transp. S.P.A. v. Republic of Albania, 693 F.Supp.2d at 137; 28 U.S.C. § 1330(b).

III.   **CONSIDERATION OF NIGERIA'S RECYCLED CLAIMS ALREADY CONSIDERED BY THE ARBITRATION PANEL AS TO ENRON CORPORATION, CONTRAVENES THE FEDERAL POLICY IN FAVOR OF EFFICIENT RESOLUTION OF ARBITRATED DISPUTES**

Federal public policy strongly favors the efficient operation of the system of arbitral dispute resolution and the enforcement of arbitral awards. Thus, federal courts have recognized that the scope of a court's review of an arbitral award is limited.  It is not the Court's role in reviewing this award to draw inferences or finds facts for itself.  *See e.g.,* United Paperworkers Int'l union v. Misco, Inc., 484 U.S. 29, 45 (1987) ("Nor does the

fact that [the court] is inquiring into a possible violation of public policy excuse a court for doing the arbitrator's task."). This court should not set about to evaluate factual or legal error by an arbitration panel in the same manner that an appeals court would do. Teamsters Local Union No. 61 v. United Parcel Serv., Inc., 272 F.3d 600, 604 (D. C. Cir. 2001) (quoting Kanuth v. Prescott, Ball & Turben, Inc., 949 F.2d 1175, 1178 (D. C. Cir. 1991).

By asserting the evidence as to ENPH's readiness to perform (but calling ENPH a party to fraud), Nigeria is in effect asking the Court to carefully scrutinize the analysis the arbitration panel likely already performed. Such an examination of the arbitrator's decision would frustrate the FAA's "emphatic federal policy in favor of arbitral dispute resolution," Mitsubishi motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 US 614, 631 (1985) (internal citation omitted). It is a policy that "applies with special force in the field of international commerce," Id. -- by "undermining the goals of arbitration, namely settling disputes efficiently and avoiding lengthy and expensive litigation," LaPrade v. Kidder, Peabody & Co., 94 F. Supp. 2, 4-5 (D. D. C. 2000) (Sullivan, Jay.), aff'd 246 F 3d 702 (D.C. Circuit 2001). Rather, "a court must confirm an arbitration award or some colorable support for the award to be gleaned from the record." Id.

Nigeria has yet to question the competency of the arbitration panel the fairness of its proceedings, or the validity of the arbitration panel's decision.

In Sections III and IV of its Memorandum, Nigeria essentially argues that ENPH's first name –- "Enron" -- is grounds for the Court to find that enforcement of the otherwise valid Final Award is contrary to public policy. It urges the Court to inquire as to the beneficial ownership of ENPH, apparently to determine whether ENPH has standing to assert the claims in the arbitration or to determine who its owners are. As it did in the arbitration, it questions whether ENPH could have in fact performed the PPA. All of the issues it raises are products of the evidence it presented to the panel that Enron Corporation collapsed, it committed financial fraud, Enron Corporation filed for bankruptcy, and Enron Corporation's financial misdeeds and problems made it more difficult for ENPH to perform under the PPA. Nigeria relies on these repeated allegations to ask the panel to draw the inference that ENPH's enforcement of its rights under the Final Award is part of a "likely fraudulent arrangement".

The Arbitration panel considered and based its assessment of the damages Nigeria's breach caused on Nigeria's recycled contentions.

A valid and final award by a competent arbitral tribunal has the same effect under the rules of res judicata, as a judgment of a court.

Restatement, § 84(10, and exceptions to the general rule at § 84(2)-(4). See e.g. Gary Born, International Commercial Arbitration in the United States, 2nd edn (Kluwer, The Hague, 2001) at 914. Thus, claim preclusion and issue preclusion apply in general with respect to prior arbitral awards. See e.g. Andreas Lowenfeld, "Arbitration and Issue Preclusion: a view from America", Arbitral Tribunals or State Courts: Who must defer to whom?, ASA Special Series No. 15, 2001; and Richard Shell, "Res judicata and  collateral estoppel: effects of commercial arbitration" (1988) 35 UCLA LAW REV 623.

Since Nigeria litigated the Enron Corporation evidence in the arbitration and could have asserted standing and ownership issues in the arbitration, it should not be permitted to re-urge those issues or derivative ones before this Court. *See e.g.* Yukos Capital S.A.R. v. OAO Samaraneftegaz, 10 Civ. 6147 (PAC), (S.D.N.Y. August 6, 2013) ("To refuse to enforce a valid award in these circumstances would run counter to the strong public policy in favor of arbitration."); *see also* Telnor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 410-11 (2d Cir. 2009).

## IV.  NIGERIA HAS FAILED TO AND CANNOT ESTABLISH THAT ENFORCEMENT OF THE FINAL AWARD IS CONTRARY TO U.S. PUBLIC POLICY

### A.  Without Proof of any Misconduct by ENPH or as to ENPH, Nigeria Asserts that Enforcement Violates U.S. Public Policy

Nigeria invokes one of the New York Convention's seven defenses to recognition and enforcement of a foreign arbitral award: that recognition and enforcement would be contrary to the public policy of the country, the United States, where recognition and enforcement is sought. *See* New York Convention, Art. V (1), (2).

Nigeria does not identify the specific public policy enforcement of an award in favor of this Petitioner would violate. It does not point to any proof of illegal, unjust or immoral conduct by ENPH, or its principals, but rather generally describes the misdeeds of Enron Corporation and its leaders or any portion of the Final Award reflective of an unjust result or proceedings. Nonetheless, dismissal of ENPH's enforcement petition is warranted, Nigeria argues, because enforcing the Final Award would make the Court a "party to the enforcement of a likely fraudulent arrangement involving parties to financial crime and bankruptcy".

### B.   The Burden for Establishing the Public Policy Exception to Enforcement is "High and Infrequently Met"

The consistent approach of United States courts has been to construe the grounds for refusing to enforce an award under the New York Convention and the FAA narrowly, reflecting the deference U.S. Courts have given to arbitral decision in practice.   *See, e.g.,* Parsons &

Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier (Ratka) (R), 508 F.2d 969, 974 (1974) ([T]here is "a general pro-enforcement bias informing the [New York] Convention ... points toward a narrow reading of the public policy defense. An expansive construction of this defense would violate the Convention's basic effort to remove pre-existing obstacles to enforcement....")

Thus, courts view the burden of establishing that an arbitral award is contrary to public policy as "high, and infrequently met," Ackermann v. Levine, 788 F.2d 830, 841 (2d Cir. 1986); and "[o] nly in clear cases" should the party seeking to deny confirmation of an arbitral award prevail, Tahan v. Hodgson, 662 F.2d 862, 866 n.17 (D.C. Cir. 1981); see also Pertambangan Minyak Dan Karaha Bodas Co. v. Perusahaan, 190 F. Supp.2d 936, 955 (S.D. Tex. 2001) ("Application of the public policy exception will succeed in only the narrowest of circumstances . . . .").

C.   **Nigeria Fails to Identify a Specific U.S. Public Policy Enforcement of the Final Award will Contravene**

This Court's authority to deny recognition of an arbitral award under the New York Convention "is limited to situations where the contract as interpreted  [by the arbitrators] would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of

supposed public interests." <u>Banco de Seguros Del Estado v. Mutual Marine Office, Inc.</u>, 344 F.3d 255, 264 (2d Cir. 2003) (emphasis added and alteration in original) (*quoting* <u>United Paperworks Int'l Union v. Misco, Inc.</u>, 484 U.S. 29, 43 (1987)).

Nigeria has failed to set forth a specific United States policy, treaty, well defined principle expressed in case law, or statute that enforcement of the Final Award would contravene. This failure, standing alone, is dispositive of the Respondent's public policy defense.

### D. Nigeria Cannot Show that Enforcement would Offend the Most Basic Notions of Morality and Justice in this Country

Even if Nigeria had identified a specific statute or case law principle enforcement of the award would violate, that would not necessarily mean, however, that an arbitral award would be denied confirmation. As one court noted:

> All laws, be they procedural or substantive, are founded on strong policy considerations. Yet not all laws represent this country's "most basic notions of morality and justice." Were it otherwise, the Convention's public policy exception would eviscerate the very goal of the Convention as a whole—to encourage the recognition and enforcement of commercial arbitration agreements.

<u>A. Halcoussis Shipping Ltd. v. Golden Eagle Liberia Ltd.</u>, Civil Action No. 88-4500 (MJL), 1989 WL 115941, at *2 (S.D.N.Y. Sept. 27, 1989).

Courts have only upheld the public policy defense to enforcement of an arbitration award where enforcement would violate the "most basic notions of morality and justice." Fotochrome, Inc. v. Copal Co. 517 F.2d 526 (2d Cir. 1975); Parsons & Whittemore, 508 F.2d at 974; *see also*, TermoRio S.A. E.S.P. (Colombia) v. Electranta S.P. (Colombia), 487 F.3d 928, 938 (D.C. Cir. 2007) *quoting* Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan, 190 F. Supp. 2d 936, 955 (S.D. Tex. 2001); Ackermann , 788 F.2d at 841 (quoting Tahan, 662 F.2d at 864).

Nigeria has failed to state how the actions of ENPH, or the enforcement of the Final Award the arbitration panel based on Nigeria's breach of contract, and an analysis of ENPH's damages in light of the demise of Enron Corporation, offend this nation's basic notions of morality and justice. As a consequence, the Court must summarily decline the request to deny confirmation of the Final Award on the public policy grounds.

## V. IN THE PPA, NIGERIA WAIVED ITS RIGHT TO CONTEST THE ARBITRATION OUTSIDE OF THE UNITED KINGDOM

Nigeria waived the right to challenge the arbitration award outside of the United Kingdom in the PPA.[15] Thus it may not proceed to challenge the binding nature of the award in this forum.

---

[15] PPA, Exhibit A to the Motion for Enforcement, p.63.

## CONCLUSION

As the Court has both personal and subject matter jurisdiction of this enforcement proceeding, and Nigeria has not alleged a sustainable defense to enforcement of the Final Award, there is no impediment to the Court confirming the Final Award ordering Nigeria to pay damages, plus interest and attorney's fees, as well as the attorney's fees and legal expenses incurred to enforce and collect the award under the terms of the PPA.

Houston, Texas                          Respectfully submitted,
Dated: January 6, 2013

                                        ____/s/_____
                                        MARK GIBSON
                                        16106 Morgan Run
                                        Missouri City, Texas 77489
                                        Phone: 713 301-9021
                                        Fax: 281 261-6357
                                        Email: MPCG2002@comcast.net
                                        D.C. Bar No. 475341

                                        OF COUNSEL:
                                        KENNETH R. BARRETT
                                        3740 Greenbriar #541873
                                        Houston, Texas 77254
                                        Phone: 281 433-0837
                                        Fax: 832 582-5935
                                        Email: KennethRoyceBarrettLaw@yahoo.com

                                        Counsel for Petitioner

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 7th day of January, 2013, a true and correct copy of **PETITITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RESPONDENT'S MOTION TO QUASH SERVICE AND DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12 (B) (1), (5) And (6)** was electronically served, using the Court's CM/ECF system, upon Counsel of record for the Respondent:

DAVID ELESINMOGUN
ELESINMOGUN & EGWUATU, LLP
1629 K Street NW, Suite 300
Washington, DC 20006
Phone: (202) 349-3977
Fax: (202) 331-3759
Email: de@eandelawyers.com

OF COUNSEL:
JACK BLUM
1629 K Street NW, Suite 300 Washington, DC 20006
Phone: (240) 476-6932
Fax: (443) 458-0656
Email: blumja@gmail.com


_____/s/_____
MARK GIBSON