**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **ENRON NIGERIA POWER HOLDING, LTD.,**<br><br>Petitioner,<br><br>v.<br><br>**FEDERAL REPUBLIC OF NIGERIA,**<br><br>Respondent. |

Case No. 1: 1:13-cv-01106 (CRC)

**MEMORANDUM OPINION AND ORDER**

In 1999, Enron Nigeria Power Holding, Ltd. ("ENPH") entered into a Power Purchase Agreement ("PPA") with Nigeria's state electric power authority to supply three barge-mounted electricity-generating units and later build a gas-fired power plant in the country. The Federal Republic of Nigeria executed the agreement as a guarantor. When the venture fizzled, the parties submitted their dispute over compensation to the International Chamber of Commerce International Court of Arbitration, as required by the PPA, and the arbitrators ultimately awarded ENPH $11.2 million in damages and $870,000 in legal costs and expenses. After Nigeria refused to pay, ENPH filed this petition seeking to enforce the award under the Convention on the Recognition of Foreign Arbitral Awards of June 10, 1958 ("the New York Convention"), of which Nigeria is a signatory.

Nigeria moved to quash service and dismiss the Petition, arguing that (1) ENPH failed to properly effectuate service under Federal Rule of Civil Procedure 4(j) and the relevant provision of the Foreign Sovereign Immunities Act ("FSIA"); (2) the Court lacked subject-matter jurisdiction over the matter due to Nigeria's sovereign immunity; and (3) enforcement of the arbitral award would be contrary to United States public policy in light of the well-documented

wrongdoing of ENPH's parent company, Enron Corporation.  Although the Court agreed on the first point, it allowed 120 additional days to effect service by alternative means because it found that ENPH showed good cause under Federal Rule of Civil Procedure 4(m).  Memorandum and Order at 7–8, July 25, 2014.  Now that ENPH has effectuated proper service, the Court turns to Nigeria's remaining arguments.  Because Nigeria explicitly waived its right to sovereign immunity in the PPA and fails to meet the extremely demanding standard required to deny enforcement of an arbitral award on public-policy grounds, the Court will deny Nigeria's motion to dismiss.

## I.       Standard of Review

When a defendant raises a challenge to the court's subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the plaintiff must establish by a preponderance of the evidence that the court has subject-matter jurisdiction.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  Although the court assumes the "truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged,'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)), the factual allegations warrant "closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim," Byrum v. Winter, 783 F. Supp.2d 117, 122 (D.D.C. 2011) (citing Macharia v. United States, 334 F.3d 61, 64, 69 (D.C. Cir. 2003)).  Unlike when resolving a motion to dismiss under Rule 12(b)(6), the court may consider materials outside the pleadings in evaluating a motion to dismiss for lack of jurisdiction. Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II.     Analysis

### A.     Subject-Matter Jurisdiction Under the FSIA

Nigeria contends that this Court lacks subject-matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1330, which is "the sole basis for obtaining jurisdiction over a foreign state in [U.S.] courts,"[1] Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 424, 434 (1989).  The FSIA provides immunity to foreign states in all cases outside of its explicitly enumerated exceptions.  Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 87 (D.D.C. 2010).  The party opposing the invocation of an exception bears the burden of proof "[i]n accordance with the restrictive view of sovereign immunity reflected in the FSIA."  Transamerican S.S. Corp. v. Somali Democratic Republic, 767 F.2d 998, 1002 (D.C. Cir. 1985).  Nigeria has failed to satisfy this burden.  Specifically, the FSIA vests district courts with jurisdiction over a foreign state when the state "has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).  Nigeria unambiguously waived its sovereign immunity in the PPA, which stated—in a section titled "Waiver of Sovereign Immunity"—that the parties "irrevocably waive[] . . . immunity to the full extent permitted by the law[]."  Pet. Ex. A. § 25.  This clear statement in a binding written contract easily meets Section 1605(a)(1)'s requirements for waiving sovereign immunity.

### B.     Public-Policy Exception to the Enforcement of Awards Under the New York Convention

Nigeria also contends that because ENPH was an offshore affiliate of Enron Corporation, whose top executives were convicted of securities fraud, allowing ENPH to use a court of the

---

[1] Nigeria also argues that the Court lacks subject-matter jurisdiction under the FSIA because "the [c]ommercial activity exception to the immunity of a foreign state does not apply in this case." Nigeria's Mot. to Dismiss at 5.  The Court need not address this argument because it finds that Nigeria expressly waived sovereign immunity in the PPA.

United States as a forum to enforce an arbitral award in its favor "will violate the U.S. public policy and interest." Nigeria's Mot. to Dismiss at 9, 11. Indeed, the New York Convention contains a public-policy exception which enables courts to refuse to enforce arbitral awards where enforcement "would violate 'some explicit public policy' that is 'well defined and dominant, and is to be ascertained by references to the laws and legal precedents and not from general considerations of supposed public interests.'" United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 43 (1987) (quoting W.R. Grace and Co. v. Local Union 759 Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers, 461 U.S. 757, 766 (1983)) (citation omitted)). Yet the standard for satisfying this exception is "high, and infrequently met." TermoRio S.A. E.S.P. v. Electranta S.P., 487 F.3d 928, 938 (D.C. Cir. 2007). "A judgment is unenforceable as against public policy to the extent that it is 'repugnant to fundamental notions of what is decent and just in the State where enforcement is sought,'" and a defendant may prevail on such a theory only when its case is "clear-cut." Id. (quoting Tahan v. Hodgson, 662 F.2d 862, 864, 866 n.17 (D.C. Cir. 1981)).

Here, Nigeria has not cited *any* specific statutes or caselaw to support the exception beyond the broad purposes and factual context of the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7201—sweeping legislation enacted in the aftermath of the Enron scandal that reshaped regulation of corporations and corporate accounting in the United States. While the Act clearly reflects a general public policy of preventing and punishing corporate fraud and other misconduct, Nigeria fails to establish why the Court should refrain from enforcing this international arbitral award simply because it involves an entity that was related to the Enron Corporation. Nigeria has therefore not met the New York Convention's demanding standard for declining to enforce the award as contrary to United States public policy. Moreover, Nigeria's

attempts to demonstrate that enforcement of the award would undermine *its* "public policy and interest as a sovereign nation," Nigeria's Mot. to Dismiss at 11, amount only to an effort to relitigate arguments that should have been (and likely were) advanced in the arbitration.

### III.    Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [13] Defendant Nigeria's Motion to Dismiss is DENIED.

**SO ORDERED.**

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:   August 6, 2015